UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FEDERATED INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ESTATE OF JAMES RANDOLPH HALE, | ) | CASE NO. 1:05-cv-0392-DFH-TAB |
| SANDRA TYLER, individual, JOSEPH A. | ) | |
| ASHER, III, individual, JESSE BOBB, | ) | |
| individual, ILLINOIS FARMERS | ) | |
| INSURANCE COMPANY, an Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The issue in this case is the effect of a "step-down" clause in an automobile
dealer's liability policy, as applied to an accident caused by a person who did not
have his own liability insurance and who was driving a dealer's vehicle as part of
a weekend-long test drive.   James Hale was killed when Joseph Asher III,
operating a truck owned by Bowman Chrysler, collided with Hale's motorcycle on
August 22, 2004.  Bowman Chrysler had loaned the truck to Sandra Tyler, Asher's
grandmother, for a test drive.  Federated Insurance has sued the Estate of James
Hale, Sandra Tyler, Asher, Jessie Bobb (Asher's passenger) and Illinois Farmers
Insurance Co. for a declaratory judgment with respect to a commercial liability
insurance policy it issued to Bowman Chrysler.   Federated has moved for

summary judgment on the issue of the maximum coverage available under the policy.  This court has diversity jurisdiction under 28 U.S.C. § 1332.

Although Federated disputes that Asher had permission to use the truck, it is willing to assume for the purposes of this motion that he had the implied permission of Tyler.  Neither Asher nor Tyler had any primary motor vehicle liability insurance.  Federated argues it is required to treat Asher as insured under the policy as an implied permissive user only up to the minimum level required by Indiana Code § 9-25-2-3, which is $25,000 per person and $50,000 per accident for death and bodily injury.  For the reasons below, the court agrees.

*Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no dispute about the facts material to Federated's motion for summary judgment.  The application of unambiguous language in an insurance contract to the undisputed facts of a case is a question of law.  *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243-44 (Ind. 2000); *Harden v. Monroe Guaranty Ins. Co.*, 626 N.E.2d 814, 817 (Ind. App. 1993).  Construction of an insurance policy is a question of law for which summary judgment is particularly appropriate.  *Myles v. General Agents Ins. Co. of America*, 197 F.3d 866, 868 (7th Cir. 1999).

*Undisputed Facts*

On Friday, August 20, 2004, Sandra Tyler went to Bowman Chrysler to look at vehicles to purchase for her dry-cleaning business. She saw a Nissan Frontier that she liked. The salesman arranged for her to pick it up the next day for a weekend test drive. See Tyler Dep. at 16-17. Bowman did not request a copy of her driver's license or proof of insurance. *Id.* at 20.

On Sunday, August 22, 2004, Sandra Tyler's grandson Joseph Asher III drove the Nissan Frontier. *Id.* at 25. Tyler had not talked with Asher about using the truck, but she testified that she had an unspoken understanding that "any of my three boys can drive my vehicle if they want." *Id.* at 26-27. Asher collided with a motorcycle driven by James Hale, who later died from injuries caused by the crash. (After the accident, Asher tested positive for cocaine and THC.) Tyler had permission to drive the Frontier, and for the purposes of this motion, the parties agree that Asher had the implied permission of Tyler to drive it.

Federated Insurance sold a commercial policy to Bowman Chrysler that covered all automobiles owned by Bowman at the time of the accident. Bowman Chrysler is the named insured under the policy, but coverage is extended to other individuals per Section II(A)(3)(a)(2). That part treats as insureds:

> (2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> . . .

(d) Your customers, if your business is shown in the Declarations as an "auto" dealership.  However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent), less than the compulsory financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limits of their other insurance.

Cplt. Ex. A at 29.  The parties agree, for the purposes of this motion, that Asher's assumed status as an implied permissive user of the Bowman truck will trigger this subsection of the Federated policy.  Because neither Asher nor Tyler had primary automobile insurance, subsection (i) is the applicable part of the Federated policy "step-down" clause that would cover the accident.

*Discussion*

The material facts of this case are not in dispute.  The issue is the maximum amount of coverage the Federated policy provides.  Assuming that Asher had the implied permission to use the truck, the "step-down" clause requires that the policy extend coverage only "up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged."  The Nissan Frontier was garaged in Indiana.  Federated argues that the limits of $25,000 per person and $50,000 per accident for bodily injury and death in Indiana Code § 9-25-2-3 should apply.  Defendants argue that the higher minimum requirements for a licensed automobile dealer, $100,000 per person and

-4-

$300,000 per accident, in Indiana Code § 9-23-2-10, should apply instead, at least on the theory that the policy reference to "the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged" is ambiguous.

In this diversity action governed by Indiana's substantive law, this federal court's role is to predict how the Indiana Supreme Court would decide the relevant questions of law.  *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 743-44 (7th Cir.1994).  Where the Indiana Supreme Court has not provided specific guidance on the question, decisions of intermediate appellate courts are treated as strong indications of the Supreme Court's likely approach, unless there is some persuasive reason to believe otherwise.  *General Accident Ins. Co. of America v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996).

The interpretation of an insurance policy "'involves the same rules of construction and interpretation as other contracts.'"  *Myles v. General Agents Ins. Co. of America*, 197 F.3d 866, 868 (7th Cir. 1999), quoting *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind. App. 1997).  The goal is to ascertain and enforce the parties' intentions as expressed in the written contract, reading the document as a whole.  *American Family Ins. Co. v. Globe American Casualty Co.*, 774 N.E.2d 932, 935 (Ind. App. 2002).  In a dispute between insurer and insured, where the language of an insurance policy is susceptible to more than one reasonable interpretation, "the court must construe the language in favor of the insured."

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.*, 40 F.3d 146, 151 (7th Cir. 1994). But where, as here, a stranger to the contractual relationship seeks coverage under a policy, courts may determine the intent of the contract from a neutral stance. *Harden v. Monroe Guaranty Ins. Co.*, 626 N.E.2d 814, 817-18 n.2 (Ind. App. 1993) (construing "step-down" clause identical to provision in this case as barring coverage beyond general financial responsibility limits where permissive driver had insurance that satisfied those limits), citing *Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 291 N.E.2d 897, 899 (Ind. 1973).

The decisive issue here is the meaning of the Federated policy's reference to "the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged." In two cases addressing the same policy language in step-down clauses identical to the Federated policy in this case, the Indiana Court of Appeals has interpreted the language as referring to the general financial responsibility requirements in Indiana Code § 9-25-2-3. *General Accident Insurance Company of America v. Hughes*, 706 N.E.2d 208, 211 (Ind. App. 1999); *Harden v. Monroe Guaranty Insurance Co.*, 626 N.E.2d 814, 819 (Ind. App. 1993).

The reasoning of both courts is persuasive, for that is the most reasonable and natural interpretation of the reference to "the compulsory or financial responsibility law limits." The financial responsibility requirements for operation of motor vehicles in Indiana are set forth in Title 9, Article 25 of the Indiana Code,

entitled "Financial Responsibility."  The cited statute provides the definition for proof of financial responsibility:

> "Proof of financial responsibility" means proof of ability to respond in damages for each motor vehicle registered by a person for liability that arises out of the ownership, maintenance, or use of the motor vehicle in the following amounts:
>
> > (1) Twenty-five thousand dollars ($25,000) because of bodily injury to or death of any one (1) person.
> > (2) Subject to the limit in subdivision (1), fifty thousand dollars ($50,000) because of bodily injury to or death of two (2) or more persons in any one (1) accident.
> > (3) Ten thousand dollars ($10,000) because of injury to or destruction of property in any one (1) accident.

Ind. Code § 9-25-2-3; accord, Ind. Code § 9-25-4-5 (repeating minimum amounts). The operative requirement is found in Indiana Code § 9-25-4-1(b):  "A person may not:  (1) register a vehicle; or (2) operate a vehicle on a public highway; in Indiana if financial responsibility is not in effect with respect to the motor vehicle under section 4 of this chapter."  Violations are punishable by suspension of driver's licenses and/or vehicle registrations.   Indiana Code § 9-25-4-1(c).   Liability insurance is only one way, though surely the most common way, to prove financial responsibility.   Financial responsibility may also be shown through execution of a bond under Indiana Code § 9-25-4-7 or through certified self-insurance pursuant to Indiana Code § 9-25-4-11.

The statute defendants cite is part of Title 9, Article 23, entitled "Vehicle Manufacturers, Distributors, and Dealers."  Chapter 2 of the article regulates vehicle merchandising, and section 10 requires a person licensed under the article

to furnish evidence of "liability insurance or garage liability insurance covering the person's place of business," with coverage limits of at least $100,000 for bodily injury one person, $300,000 for bodily injury for each accident, and $50,000 for property damage.  Ind. Code § 9-23-2-10.  Unlike the more generally applicable financial responsibility statute, the dealership statute does not allow the option of a bond or self-insurance.

The Indiana Court of Appeals decisions construing identical step-down clauses for permissive users of vehicles owned by dealers clearly signal that the Indiana courts would construe the reference in the Federated policy as applying the general financial responsibility law rather than the law requiring liability insurance for auto dealers.  First, in *Harden v. Monroe Guaranty Insurance Co.*, 626 N.E.2d 814 (Ind. App. 1993), a customer borrowed a dealer's car for a weekend test drive.  The customer's wife drove the car and was injured in an accident.  The injured wife sought underinsured motorist coverage under the dealer's policy.  The decisive issue was whether she was an insured under the policy, which included a step-down clause identical to the provision at issue here.  The injured wife had coverage under her own insurance policy up to the general financial responsibility limits.  The Court of Appeals affirmed summary judgment for the dealer's insurer, holding that the injured wife's own insurance that satisfied those limits meant that she was not an "insured" under the dealer's policy.  626 N.E.2d at 819.  The Court of Appeals thus necessarily concluded that the reference in the step-down clause to "the compulsory or financial

-8-

responsibility law limits" referred to the general financial responsibility statute with the lower limits, and not to the higher garage liability insurance requirement for motor vehicle dealers.

In *General Accident Insurance Co. of America v. Hughes*, 706 N.E.2d 208 (Ind. App. 1999), the Court of Appeals interpreted another "step-down" clause identical to the one in the policy here. In that case, as well, a customer borrowed a dealer's car for a test drive. She was involved in a fatal accident. The customer had her own motor vehicle insurance that provided coverage up to the minimum requirements of the financial responsibility law. The dealer had a garage liability policy with a personal injury limit of $1,000,000 per accident. The estate of the deceased victim sought to show coverage under the dealer's policy with the higher limit. Reversing a summary judgment in favor of the estate, the Court of Appeals held that the customer was not an insured under the plain language of the step-down clause in the dealer's policy. 706 N.E.2d at 211. That conclusion necessarily implied that the policy reference to financial responsibility law limits referred the general limits in Ind. Code § 9-25-2-3, and not to the higher limits applicable to an auto dealer's garage liability insurance.

Thus, both *Hughes* and *Harden* necessarily concluded that identical policy language referred to the general financial responsibility law. Under that reasoning as applied to this case, Asher was an insured under the Federated policy issued to Bowman Chrysler only up to the limit of $25,000 per person and $50,000 per

accident for death and personal injury.  Defendants in this case have not offered

any persuasive reason to expect the Indiana Supreme Court to take a different

approach.  A person looking for the  "the compulsory or financial responsibility

law limits" in Indiana would most naturally understand it as referring to the

general limits in Indiana Code § 9-25-2-3.  Those requirements are framed in

terms of "financial responsibility," without limiting compliance to providing proof

of liability insurance.  A person looking for "the compulsory or financial

responsibility law limits" would not expect to find them in a statute applicable

only to auto dealers and framed only in terms of "liability insurance" rather than

"financial responsibility."  This result is also consistent with the purpose of both

the financial responsibility law and the step-down provision, for it assures that a

customer's permissive use of a dealer's vehicle will be covered to the same extent

as if the customer himself has complied with the financial responsibility law.[1]

*Conclusion*

Accordingly, the court hereby grants Federated Insurance's motion for

summary judgment and finds that, if Asher is shown to be a permissive user of

---

[1]Inflation and the passage of time, however, have worked to undermine the purpose of the financial responsibility law.  The Indiana General Assembly adopted the current monetary levels in 1982.  See 1982 Ind. Acts 804-05 (P.L. 85, § 2) (prior to recodification).  Since that time, the consumer price index for urban consumers has doubled.  See www.bls.gov/news.release/cpi.t03.htm (last visited July 31, 2006).  Only the Indiana General Assembly can address this erosion resulting from inflation.

the vehicle in question, coverage under the Federated insurance policy is limited

to$25,000 for bodily injury or death for one person and $50,000 per accident.


      So ordered.


Date: August 1, 2006

                                                _____
                                                DAVID F. HAMILTON, JUDGE
                                                United States District Court
                                                Southern District of Indiana


Copies to:

Lia R. Lukaart
GOODIN ABERNATHY & MILLER
llukaart@gamlawyers.com

Michael W. Phelps
NUNN LAW OFFICE
mphelps@kiva.net

Karl G Popowics
GOODIN ABERNATHY & MILLER
kpopowics@gamlawyers.com

Jeffrey D. Roberts
RILEY BENNETT & EGLOFF LLP
jroberts@rbelaw.com

Raymond T. Seach
RILEY BENNETT & EGLOFF LLP
rseach@rbelaw.com

SANDRA TYLER
103 E. 2nd Street
Seymour, IN 47274

JOSEPH A. ASHER III
103 E. 2nd Street
Seymour, IN 47274